UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BENJAMIN MARTINEZ,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀CIVIL ACTION NO. 23-10285-PBS
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
NELSON ALVES,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Respondent.⠀⠀⠀⠀)

## REPORT AND RECOMMENDATION ON PETITION FOR WRIT
## OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 AND MOTION TO STAY

July 25, 2024

DEIN, U.S.M.J.

## I.⠀⠀⠀INTRODUCTION

On March 8, 2017, the petitioner/defendant Benjamin Martinez was convicted of

murder in the first degree on the theory of extreme atrocity or cruelty in connection with the

death of Caridad Puente on June 9, 2004.  He was sentenced to a term of life imprisonment

without parole.  Martinez's murder conviction was affirmed on direct appeal by the

Massachusetts Supreme Judicial Court ("SJC") on April 23, 2021, and the SJC declined to

exercise its extraordinary power under Mass. Gen. Laws ch. 278, § 33E.  Commonwealth v.

Martinez, 487 Mass. 265, 166 N.E.3d 997 (2021).  After several unsuccessful motions filed with

the state courts, Martinez filed the instant timely pro se habeas petition pursuant to 28 U.S.C. §

2254 on February 2, 2023, as amended on February 6, 2023.  (Docket No. 1).  On January 16,

2024, Martinez filed, pro se, "Petitioner's Motion to Amend Petition for Writ of Habeas Corpus

and Stay Proceedings Pending State-Courts Exhaustion of New Claims" (Docket No. 48) ("Stay

Motion") which is also pending before this court.

After careful consideration of the parties' oral and written arguments, and for the

reasons detailed herein, this court recommends to the District Judge to whom this case is

assigned that Martinez's habeas petition and Stay Motion be denied.  On both procedural

grounds and on the merits, Martinez has not stated a claim that the decisions of the state

courts were contrary to or an unreasonable application of federal law as defined by the United

States Supreme Court.  In the absence of any constitutional violation, there is no basis for

habeas relief.

## II.    STATEMENT OF FACTS[1]

### State Court Proceedings

Martinez was indicted by a Hampden County grand jury on December 22, 2014 on one

charge of murder in violation of Mass. Gen. Laws ch. 265, § 1, and one charge of possession of a

Class A controlled substance, heroin, in violation of Mass. Gen. Laws ch. 94C, § 34.  (Docket No.

13-1 at 1-2, 4).  An eight-day trial was held before the Honorable Richard J. Carey at the

Hampden County Superior Court beginning on February 24, 2017.  (Id. at 3-4, 13).  The jury

found Martinez guilty of first-degree murder on March 8, 2017.  (Id. at 4, 14).  The next day,

---

[1] The Respondent filed the state court record in a two-volume Supplemental Answer ("SA") at Docket No. 13, as amended by the substitution of Exhibits 38, 39 and 40 by Docket No. 29, and as supplemented by the attachments to Respondent's Memorandum in Opposition to Petition (Docket No. 45) ("Resp. Mem.") and Respondent's Response to Petitioner's Motion to Append Omitted, Relevant Portions of the Response to Petition" (Docket No. 52) ("Resp. Response").  In addition to the exhibits attached to his habeas petition, as amended (Docket No. 1), Martinez has filed exhibits as attachments to his Memorandum of Law in support of his habeas petition (Docket No. 35) ("Def. Mem.") and separately at Docket No. 56 ("Def. Supp. Ex.").  Martinez also submitted a DVD containing the oral argument of his direct appeal to the SJC at Docket No. 58.  Unless otherwise indicated, page references are to the CM/ECF page numbering.

March 9, 2017, he pled guilty to the drug charge, and was sentenced on both convictions.  (Id. at 2, 14-15).  The court imposed the mandatory sentence of life without the possibility of parole on the first-degree murder conviction and a concurrent sentence of two years on the drug possession conviction.  (Id. at 15).  The SJC affirmed his conviction on direct appeal on April 23, 2021.  (Docket No. 13-2 at 3).  On June 23, 2021, Martinez filed a *pro se* Motion for Reconsideration or Modification, which was denied by the SJC on August 3, 2021, without opinion.  (Id.).

On July 6, 2022, Martinez filed a pro se "Motion for Post-Conviction Relief Pursuant to Massachusetts Rules of Criminal Procedure Rule 30(b)."  (Docket No. 13-1 at 16; Docket No. 13-7).  Therein he raised, for the first time, an objection to the testimony of a substitute medical examiner at trial, as the original medical examiner had been unable to testify, and a contention that counsel was ineffective for failing to raise this objection.  (Id.).  The motion was denied by the trial judge on the grounds that "[t]he defendant has failed to raise a substantial issue regarding the substitute medical examiner's references to the original medical examiner's report."  (Docket No. 13-1 at 17).  On August 8, 2022, Martinez filed, as required by state law, a "Petition Under G.L. Ch. 278, § 33E, for Leave to Appeal the Denial of a New Trial Motion in Capital Case ("Gatekeeper Petition")" with a Single Justice of the SJC.  (Docket No.13-3 at 1; Docket No. 13-8 at 19).  As discussed more fully below, this Gatekeeper Petition was denied by a Single Justice of the SJC in a detailed docket order on November 16, 2022.  (Docket No. 13-3 at 2-3).  Martinez filed a timely habeas petition on February 2, 2023.

### The Habeas Petition

In his habeas petition, Martinez raised the following four grounds for relief:

GROUND ONE: **Exclusion of third-party culprit evidence**.  "The exclusion of evidence that another may have committed the crime or had the motive, intent, and opportunity to commit it, thereby deny petitioner's right to due process and to present a defense secured by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 12 of the Declaration of Rights." (Docket No. 1-1 at 8, 19).  This relates to the potential liability of Quinito Rodriguez a/k/a Alex; the Dominican brothers and their associates; and "Monster." (Id. at 19-23).

GROUND TWO: **Exclusion of Defendant's Testimony.**  "The trial court erred in failing to allow petitioner to testify as to statements of Alexis Guzman-Abregon that should have been admitted as state of mind evidence to show third-party culprit, thereby denying petitioner's right to due process and to present a defense secured by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution." (Docket No. 1-1 at 9, 24).

GROUND THREE: **Voluntary intoxication instruction/extreme atrocity or cruelty; And Ineffective assistance of counsel.**  "The lack of instruction failed to tell the jury that petitioner's drug use was a factor in determining extreme atrocity or cruelty, thereby denying his right to due process and present a defense secured by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 12 of the Declaration of Rights." (Docket No. 1-1 at 11, 27).

GROUND FOUR: **Confrontation Clause Violation; Ineffective assistance of counsel; And Prosecutorial error.**  "Dr. Andrew Sexton testified for the Commonwealth.  He testified based on the autopsy report that was prepared by Dr. Lawrence Mednick, on the autopsy of Caridad Puente on June 9, 2004, thereby denying petitioner's right to due process and to present a defense secured by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution." (Docket No. 1-1 at 13, 28).

By his Stay Motion, Martinez is seeking leave to amend his habeas petition to include further amplification of Ground One to add "trial counsel's failure to investigate and use certain third-party-culprit evidence pertaining to Alexis Guzman." (Stay Motion at 7).[2]

### **The Underlying Crime**

Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a state court shall be presumed to be correct.  The applicant shall have the burden of rebutting the

---

[2] Guzman is interchangeably referred to as "Alexi" or "Alexis."

presumption of correctness by clear and convincing evidence."  This presumption of correctness

"applies to determinations made by both state trial and appellate courts."  Gaskins v. Duval, 640

F.3d 443, 452 (1st Cir. 2011).  Martinez's objections focus on the exclusion of evidence which he

contends would have established the guilt of others, including Alexi Guzman, for the murder.

Unless otherwise indicated, the following facts are not in dispute.

> In June 2004, the victim was engaged in selling heroin from her apartment where
> she lived with her two young sons and a male known only as "Monster."  At
> approximately 8:30 A.M. on June 9, the victim's sister picked up the victim's older
> son to take him to school.  A witness observed two men leaving the victim's
> apartment between 11:15 A.M. and 12:30 P.M. and another man banging on the
> victim's door around 2:20 P.M.  At approximately 3:30 P.M., after the victim failed
> to pick her son up from school, the victim's sister went to the apartment to check
> on her.  Upon arrival, she found the door locked and heard the sound of a baby
> crying inside.  The sister broke one of the apartment windows and, upon entering,
> discovered the victim's lifeless body propped up in a sitting position against the
> back wall of a closet in a pool of blood, with her toddler son by her side crying.
> The victim had suffered thirty-two sharp force injuries to her face, neck, and chest.

> In addition to the blood in the closet where the victim's body was discovered,
> blood was found in various locations throughout the apartment, including the
> kitchen, the bathroom, and a bedroom.  Deoxyribonucleic acid (DNA) analyses
> conducted on bloodstains in the kitchen as well as on scrapings taken from the
> victim's fingernails eventually[fn] were matched to the defendant's DNA profile.  In
> December 2014, a grand jury indicted the defendant, charging him with murder in
> the first degree and unlawful possession of heroin.

> > [fn] There were no leads in the case until 2014, when an inquiry with the
> > Combined DNA index system (known as CODIS) determined that the
> > defendant's DNA profile matched the profiles developed from several of
> > the identified bloodstains.

> At trial, the defendant testified that he had purchased heroin from the victim and
> that his blood was present in the victim's apartment because he accidentally
> injured himself while unsuccessfully injecting heroin.  He claimed that a third party
> was responsible for killing the victim.

Martinez, 487 Mass. at 266-67, 166 N.E.3d at 1002-03.  Of relevance to the issues raised herein,

Martinez also testified at trial that while at the victim's apartment, "he saw Alexi Guzman argue with the victim and that the argument escalated, culminating with Guzman attacking the victim with a kitchen knife."  Id. at 271, 166 N.E.3d at 1006.  He further testified that he was injured himself when he attempted to separate them.  Id.

**Direct Appeal to the SJC**

In Massachusetts, appeals from first-degree murder convictions go directly to the SJC. See Mass. Gen. Laws ch. 211A, § 10.  The SJC considers both the law and evidence and "may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence."  Mass. Gen. Laws ch. 278, § 33E.  Here, after review, the SJC declined to exercise its jurisdiction under § 33E.

Exclusion of Third-Party Culprit Evidence

The first issue the SJC addressed was the denial of defendant's pretrial motion "in limine to admit evidence suggesting that the victim might have been killed by other individuals." Martinez, 487 Mass. at 267, 166 N.E.3d at 1003.  These are the issues raised in Ground One of the defendant's habeas petition.  The SJC reviewed the rulings *de novo*, applying the standard that "[t]hird-party culprit evidence is admissible if it tends to show that another person committed the crime or had the motive, intent, and opportunity to commit it, and if the evidence is of substantial probative value, and will not tend to prejudice or confuse[.]"  Id. at 267-68, 166 N.E.3d at 1003-04 (internal quotations and citation omitted).  The SJC concluded

[6]

"that the judge did not err in excluding any of the third-party culprit evidence that the defendant sought to admit."  Id. at 268, 166 N.E.3d at 1004.

Specifically, with respect to Rodriguez, the SJC held:

The defendant sought to implicate Alex Quinito Rodriguez, a family friend of the victim, by introducing evidence that Rodriguez drove a motor vehicle registered to the victim and was seen banging on the victim's apartment door on the day she was killed.  During the subsequent investigation, although investigators spoke with someone purporting to be Rodriguez on the telephone, that person refused to meet with police.

These alleged facts, without more, are wholly inadequate to be admissible as third-party culprit evidence.  That Rodriguez was banging on the victim's apartment door on the day she died suggests, at most, that he may have had the opportunity to commit the murder; it says nothing about motive or intent.  See Commonwealth v. O'Brien, 432 Mass. 578, 589, 736 N.E.2d 841 (2000) (evidence that third party appeared at crime scene at around time of murder did not constitute substantial link between third party and murder).  Further, that Rodriguez may have been uncooperative with the investigation is also of little consequence.  An individual's decision not to speak with police is not itself inculpatory, especially where, as here, Rodriguez was believed to be an undocumented immigrant. See Commonwealth v. Chicas, 481 Mass. 316, 322, 114 N.E.3d 975 (2019) (witness's status as undocumented immigrant may make witness less likely to cooperate with government); Irwin v. Commonwealth, 465 Mass. 834, 852, 992 N.E.2d 275 (2013) ("An individual who has not been arrested or charged ... may choose not to speak with police for a myriad of reasons").

Martinez, 487 Mass. at 268, 166 N.E.3d at 1004 (footnote omitted).

With respect to "Monster" the SJC held:

Because there were no signs of forced entry when the victim was found, the defendant sought to introduce the fact that Monster lived with the victim at the time of her death, and that investigators were unable to locate him following the murder, as proof that he may have been the killer.  As with the evidence concerning Rodriguez, this evidence demonstrates no more than Monster's potential opportunity to kill the victim; it does not tend to prove that he was in fact the culprit. See O'Brien, 432 Mass. at 589, 736 N.E.2d 841.  Nor does the fact that police could not locate Monster following the victim's death tend to prove that he killed her.  See Irwin, 465 Mass. at 852, 992 N.E.2d 275.

Martinez, 487 Mass. at 268-69, 166 N.E.3d at 1004.

Finally, the SJC held that the trial judge had properly excluded hearsay evidence demonstrating that a group of four brothers from the Dominican Republic had a motive to murder the victim in that they had violent interactions with the father of the victim's son and also were upset with the victim because she had told others that they had stolen money and drugs. Id. at 269, 166 N.E.3d at 1004-05. The SJC held:

> Hearsay offered as third-party culprit evidence is admissible, even if it does not fall within a hearsay exception, provided that "the evidence is otherwise relevant, will not tend to prejudice or confuse the jury, and there are other 'substantial connecting links' to the crime." O'Brien, 432 Mass. at 588, 736 N.E.2d 841, quoting Commonwealth v. Rosa, 422 Mass. 18, 23, 661 N.E.2d 56 (1996). Given its widest latitude, the evidence that the defendant sought to introduce demonstrates that the Dominican brothers may have had a motive to kill the victim. However, motive alone is not enough to demonstrate third-party culpability. See Commonwealth v. Bright, 463 Mass. 421, 440, 974 N.E.2d 1092 (2012). Accordingly, the trial judge properly excluded the hearsay statements at issue here, as they did not establish a substantial connecting link between the Dominican brothers and the victim's death. See Commonwealth v. Smith, 461 Mass. 438, 447, 961 N.E.2d 566 (2012) (victim's fear of third party insufficient to constitute substantial connecting link between third party and crime). Contrast Commonwealth v. Keizer, 377 Mass. 264, 267, 385 N.E.2d 1001 (1979) (substantial connecting links between offense charged and subsequent crime included similar modus operandi by individuals of similar description).
>
> Because the hearsay statements provided no substantial connecting links between the Dominican brothers and the victim's death, their probative value was substantially outweighed by their tendency to confuse the jury. See Silva-Santiago, 453 Mass. at 801, 906 N.E.2d 299 ("the admission of feeble third-party culprit evidence poses a risk of unfair prejudice to the Commonwealth, because it inevitably diverts jurors' attention away from the defendant on trial and onto the third party"). Thus, there was no error in excluding the statements. See O'Brien, 432 Mass. at 589, 736 N.E.2d 841.

Martinez, 487 Mass. at 269-70, 166 N.E.3d at 1005 (footnote omitted).

Finally, the SJC addressed the exclusion of so-called "Bowden" evidence[3] directed to a claim that the police had information about other suspects, that is the Dominican brothers, but failed to investigation those leads.  Id. at 270 & n.7, 166 N.E.3d at 1005-06 & n.7.  The SJC held that in the absence of any connecting links between the Dominican brothers and the victim's death, and the fact that the evidence in question "was no more than speculation and conjecture" it was not an abuse of discretion to exclude such testimony.  Id. at 271, 166 N.E.3d at 1006.

The Defendant's Testimony

The SJC next addressed Martinez's objection to the trial judge's rulings preventing him from testifying as to statements made by Guzman before and after Guzman attacked the victim with a kitchen knife.  Id. at 271, 166 N.E.3d at 1006.  These are the issues raised in Ground Two of the habeas petition.  The SJC ruled that the trial judge had erred in excluding the statements as hearsay, since they had not been offered for the truth.  Id. at 272, 166 N.E.3d at 1007.  The SJC then determined, however, that the exclusion of the statements was not prejudicial.  Id.

Specifically, the SJC ruled as follows:

At sidebar, defense counsel proffered that the defendant would testify that Guzman made statements such as "Look how much you like him; What are you doing; Sleeping with him; things of that nature," and argued that the testimony was not being offered for the truth, but instead to demonstrate Guzman's state of mind.  Specifically, the defendant offered these statements to show Guzman's animosity toward him and the romantic relationship between Guzman and the victim.

We agree that, because Guzman's statements were not offered for their truth, they were excluded improperly on hearsay grounds.  See Commonwealth v. Sullivan, 410 Mass. 521, 526, 574 N.E.2d 966 (1991).  The defendant nevertheless was able to testify that he felt like he "just got caught by someone's husband with

---

[3] Commonwealth v. Bowden, 379 Mass. 472, 399 N.E.2d 482 (1980).

his wife at his house."  He further testified that Guzman was "upset" and "angry," that "[t]here was animosity" between Guzman and the victim, and that they were saying "nasty things" to each other.  Based on this testimony, the jury readily could have inferred that Guzman and the victim were in a relationship and that Guzman was angry with the victim because the defendant was in the apartment.  We therefore conclude that the exclusion of Guzman's actual statements was nonprejudicial.  See Commonwealth v. Cassidy, 470 Mass. 201, 216, 21 N.E.3d 127 (2014) (erroneous exclusion of statements made during telephone call not prejudicial, as jury could infer threats were made because defendant fled after telephone conversation).

Martinez, 487 Mass. at 271-72, 166 N.E.3d at 1006-07.

Martinez was also prohibited from testifying that after Martinez had spoken with Rodriguez on the phone, "Guzman told the defendant that Guzman was going to take the victim to a hospital and that Rodriguez was going to pick up the defendant to bring the defendant to the hospital."  Id. at 272, 166 N.E.3d at 1007.  These statements were not being offered for the truth but were offered "to demonstrate both Guzman's alleged intent to deceive the defendant and to explain why the defendant would leave a badly injured woman alone with her attacker." Id.  While finding that the exclusion of this evidence as hearsay was in error as it was not being offered for the truth, the SJC held that the error "was harmless beyond a reasonable doubt" since it was "cumulative of the evidence that the jury already had before them."  Id. at 273, 166 N.E.3d at 1007.  Specifically, Martinez had testified that "he told Guzman, '[W]e need to go to the hospital,' and that Guzman had then telephoned Rodriguez."  Id. at 272, 166 N.E.3d at 1007 (alteration in original).  "On cross-examination, the defendant testified that he left the victim with Guzman in the apartment because he understood that Guzman was going to bring the victim to the hospital."  Id.  The excluded testimony, therefore, was "cumulative of other evidence that was before the jury."  Id.

[10]

Jury Instructions

In his direct appeal, Martinez challenged two aspects of the jury instructions.  The first related to the charge given concerning assessing the credibility of a witness and is not at issue in this habeas petition so it will not be addressed further.  See id. at 273, 166 N.E.3d at 1008. The second objection related to the trial judge's failure to instruct the jury that they could consider intoxication when determining whether the crime was committed with extreme atrocity or cruelty, and whether counsel was ineffective for failing to raise the issue at trial.  Id. & n.8.  This issue is before this court in connection with Martinez's Third Ground for habeas relief.

The SJC concluded that since the issue had not been raised at the time of trial, the court "must determine whether there was error and, if so, whether it created a substantial likelihood of a miscarriage of justice" under Mass. Gen. Laws ch. 278, § 33E, a standard that "is more favorable to the defendant than the standard for ineffective assistance of counsel[.]"  Id. & n.8 (citing Commonwealth v. Wright, 411 Mass. 678, 682, 584 N.E.2d 621, 624 (1992); S.C., 469 Mass. 447, 14 N.E.3d 294 (2014)).  The SJC concluded that while there was error in not giving the instruction, there was no likelihood of a miscarriage of justice.  As the SJC held:

> In determining whether a homicide was committed with extreme atrocity or cruelty, whether and to what extent a defendant's mental capacity is impaired is a factor that the jury can consider.  Commonwealth v. Kolenovic, 478 Mass. 189, 194, 84 N.E.3d 781 (2017).  Here, as the Commonwealth concedes, because evidence was presented that the defendant used heroin on the night of the victim's death, he was entitled to an instruction that the jury could consider such evidence in determining whether the killing was committed with extreme atrocity or cruelty.  See Commonwealth v. Gonzalez, 469 Mass. 410, 421-422, 14 N.E.3d 282 (2014), citing Commonwealth v. Perry, 385 Mass. 639, 648-649, 433 N.E.2d 446 (1982).

Nevertheless, we conclude that the error did not result in a substantial likelihood of a miscarriage of justice, as the evidence presented at trial did not suggest that the defendant was actually intoxicated or otherwise impaired.  Although the defendant testified that he had attempted to inject himself with heroin while he was at the victim's apartment, he said that he was unable to do so successfully.  Further, the defendant did not claim that the heroin he attempted to use had any effect on his mental capacity.[fn]  Because the evidence did not demonstrate that the defendant actually was impaired, the failure to instruct on voluntary intoxication in connection with whether the defendant killed the victim with extreme atrocity or cruelty did not create a substantial likelihood of a miscarriage of justice.

> [fn] At any rate, we note that the jury heard testimony that the defendant was a long-time heroin addict and that heroin addicts frequently build immunity to heroin use.

Martinez, 487 Mass. at 274-75, 166 N.E.3d at 1009.

Sufficiency of the Evidence

Finally, the SJC reviewed, and rejected, the defendant's contention that the evidence was insufficient to support his conviction, and thereafter declined to exercise its extraordinary powers under Mass. Gen. Laws ch. 278, § 33E.  Martinez, 487 Mass. at 275-77, 166 N.E.3d at 1009-10.  Martinez's principal argument was that the Commonwealth had failed to demonstrate that his DNA was deposited in the victim's apartment at the time of the crime.  Id. at 275, 166 N.E.3d at 1009.  As the SJC held:

> The evidence presented at trial was more than sufficient to allow a rational fact finder to conclude beyond a reasonable doubt that the DNA extracted from the victim's fingernail scrapings and from bloodstains in the kitchen, matching the defendant's DNA profile, were deposited at the time of the crime.  The jury heard testimony from the victim's son and the victim's sister regarding the fact that when the former left the apartment that morning for school, there was no visible blood splattered about, and regarding the state of the apartment when the latter entered that afternoon and discovered the victim's body.  Moreover, during his testimony, the defendant admitted to being present in the apartment when the victim was attacked.

This evidence, although circumstantial, was sufficient to allow the jury to infer that the defendant attacked the victim with a knife and sustained wounds as the victim attempted to protect herself.  See Commonwealth v. Mejia, 461 Mass. 384, 392, 961 N.E.2d 72 (2012) (Commonwealth may rely entirely on circumstantial evidence, so long as inferences drawn from it are reasonable and possible).  Thus, although the defendant provided an alternative explanation for how DNA matching his profile came to be found on the victim's body among other places in the apartment, i.e., that he was injured as he attempted to stop Guzman's knife attack on the victim, where "the evidence lends itself to several conflicting interpretations, it is the province of the jury to resolve the discrepancy and 'determine where the truth lies.'" Commonwealth v. Platt, 440 Mass. 396, 401, 798 N.E.2d 1005 (2003), quoting Commonwealth v. Lydon, 413 Mass. 309, 312, 597 N.E.2d 36 (1992).  That is exactly what the jury properly did here.  The judge did not err in denying the defendant's motions for a required finding of not guilty.

Martinez, 487 Mass. at 276, 166 N.E.3d at 1010 (footnote omitted).

### Confrontation Clause

As noted above, Martinez sought leave from a Single Justice of the SJC to appeal the denial of his motion for a new trial challenging the testimony of a substitute medical examiner at trial.  This is the issue raised in Ground Four of Martinez's habeas petition.  In denying his "Gatekeeping Petition," the Single Justice found that Martinez had not raised a "new issue" under Mass. Gen. Laws ch. 278, § 33E, as the issue "could have been raised on direct appeal, and the law governing the issue was well-established at the time of the defendant's trial and appeal." (Docket No. 13-3 at 2).  The Single Justice nevertheless went on to address whether the issue raised by Martinez was "substantial" under § 33E, *i.e.* whether "an appellate court would find it worthy of consideration" and concluded that it was not.  (Id. at 3).  As the Single Justice held:

A substitute medical examiner who did not perform the autopsy may offer an opinion at trial.  See Commonwealth v. Reavis, 465 Mass. 875, 883 (2013).  The expert may form a proper independent opinion on the cause of the victim's death by reviewing another medical examiner's autopsy report and autopsy photographs.  See Commonwealth v. Leiva, 484 Mass. 766, 792 (2020).  Here,

[13]

aside from a few passing references to the original medical examiner's report, the substitute medical examiners testimony was primarily focused on describing his own observation of the victim's injuries as shown by the autopsy photographs, which were admitted as exhibits at trial.  See Leiva, supra at 791.  Moreover, because the issue at trial was whether the defendant was the killer, and not the cause of death or the brutality of the attack, the brief references to statements in the autopsy report were harmless.  See Commonwealth v. Enemy, 463 Mass. 138, 146 (2012) (harmless error where hearsay in testimony of substitute medical examiner went only to cause of death, and issue not contested at trial).  Thus, the claim is not "substantial" within the meaning of G.L. c. 278, § 33E.

(Docket No. 13-3 at 3).  The Single Justice also rejected Martinez's contention that appellate counsel had been ineffective for failing to raise the issue on appeal, finding that the issue was neither new nor substantial.  (Id.).  As the Single Justice held in part:

Following a conviction of murder in the first degree, a defendant challenging his counsels' strategic decision must show that the decision was "manifestly unreasonable" and that it created "a substantial likelihood of a miscarriage of justice."  See Commonwealth v. Burgos, 462 Mass. 53, 69 (2012).  Here, as the brief references to the autopsy report did not create a substantial issue, appellate counsel's failure to raise the argument could not have been ineffective.  See Commonwealth v. Enemy, 463 Mass. 138, 153 (2012).

(Docket No. 13-3 at 3).

Additional facts will be provided below as appropriate.

### III.    STAY MOTION

Martinez has moved to amend his habeas petition to add to Ground One a "violation of his right to effective assistance of trial counsel for failing to investigate and use certain third-party-culprit evidence[,]" specifically, evidence that Martinez witnessed an argument between Alexis Guzman and the victim on the day of her death which escalated and culminated "in Guzman attacking the victim with what appeared to be a kitchen knife." (Stay Motion at 10-12).  While the basis for this request is not clear, it appears that Martinez is acknowledging that he did testify to these facts during trial, but is arguing that trial counsel was ineffective in using

[14]

this evidence to obtain "a plea agreement or other form of cooperation agreement" that "would have [precluded] the murder in the first-degree conviction." (Id. at 10-11). He further contends that appellate counsel was ineffective for failing to raise the issue on direct appeal. (Id. at 11). He asks this court to stay these proceedings and hold them in abeyance so that he can pursue these claims in state court. (Id. at 3, 12). For the reasons that follow, this court recommends that the Stay Motion be denied.

<u>Stay and Abeyance Procedure</u>

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thus giving the state the first 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" <u>Josselyn v. Dennehy</u>, 475 F.3d 1, 2-3 (1st Cir. 2007) (quoting <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 88, 888, 130 L. Ed. 2d 865 (1995) (per curium) (internal citations omitted)). "In order to promote principles of comity and federalism, 'a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application.'" <u>Fusi v. O'Brien</u>, 621 F.3d 1, 5 (1st Cir. 2010) (quoting <u>Adelson v. Di Paola</u>, 131 F.3d 259, 261 (1st Cir. 1997)). Not only does the exhaustion doctrine ensure "that state courts are afforded an adequate opportunity to adjudicate constitutional claims properly within their jurisdiction[,]" but the "doctrine also finds support in a pragmatic recognition that federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review." <u>Id.</u> (internal quotations and citations omitted).

Martinez has requested that the court invoke a "stay and abeyance" procedure whereby "the petitioner would receive a stay in his federal habeas case, permitting him to return to state court to complete the requirements for exhaustion on any unexhausted claims, and he could subsequently return to federal court to pursue his habeas claims." Clements v. Maloney, 485 F.3d 158, 169 (1st Cir. 2007). This procedure is available only in limited circumstances where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Rhines v. Weber, 544 U.S. 269, 278, 125 S. Ct. 1528, 1535, 161 L. Ed. 2d 440 (2005). This is not such a case.

## Failure to Exhaust

There is no question that Martinez did not exhaust his claim based on "trial counsel's failure to investigate and use certain third-party culprit evidence pertaining to Alexis Guzman" either at trial or as part of plea negotiations. (See Stay Motion at 7). Claims of ineffective assistance of counsel must be fairly presented to the state courts and exhausted before they can be considered on a federal habeas review. See Gunter v. Maloney, 291 F.3d 74, 81-82 (1st Cir. 2002). Exhaustion is particularly important in claims of ineffective assistance of counsel because such claims require "a great deal of factual development" which "should occur in the state court system." Id. at 81. Under Massachusetts law, claims of ineffective assistance of counsel are generally raised in a motion for a new trial, although they can be raised on a direct appeal where, as here, "the factual basis of the claim appears indisputably on the trial record." Commonwealth v. Zinser, 446 Mass. 807, 810-11, 847 N.E.2d 1095, 1098 (2006) (internal quotation and citation omitted). Nevertheless, Martinez did not raise a claim relating to the

[16]

failure to pursue the potential liability of Alexis Guzman as an issue in his direct appeal to the SJC.  (Docket No. 13-4 at 32-42, 46-49, 49-56).  Similarly, he did not raise any such issue in his motion for reconsideration to the SJC (Docket No. 45-1), his motion for a new trial (Docket No. 13-7 at 2, 4-8), or in his Gatekeeper Petition to a Single Justice of the SJC seeking leave to appeal the denial of his motion for a new trial.  (Docket No. 13-8 at 19-20, 26-35).  Under Massachusetts law, "a claim not raised is waived" and is deemed to be procedurally defaulted.  Gunter, 291 F.3d at 79.[4]

Martinez has not established "good cause" for failure to raise these claims in the state courts, as they were obviously known to him at the time of trial.  Martinez cites to his *pro se* status and "unfamiliarity with law and specifically habeas corpus practice and procedure" to justify his failure to comply with the exhaustion requirements.  (See Stay Motion at 3).  However, absent special circumstances, "filing *pro se* does not excuse a petitioner from the exhaustion requirement."  Sullivan v. Saba, 840 F. Supp. 2d 429, 437 (D. Mass. 2012) (and cases cited).  See also Sena v. Kenneway, 997 F.3d 378, 387 (1st Cir. 2021) (habeas *pro se* "petitioner was bound by the same general set of procedural expectations that apply to litigants represented by counsel" but in assessing "good cause" court must consider a petitioner's *pro se*

---

[4] Where claims are procedurally defaulted, they can only be reviewed in connection with a habeas petition if the "petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered."  Gunter, 291 F.3d at 78.  Since Martinez has not established good cause for the default, the court will not reach the issue of prejudice, which requires evidence that the error worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994) (citation omitted).  In any event, no such evidence exists in the instant case.  Similarly, "for habeas purposes the federal 'fundamental miscarriage of justice' standard means that petitioner must establish actual innocence."  Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999).  No such claim is made here, and Martinez has not even attempted to support any such claim with "new reliable evidence" which is generally required.  See Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 865, 130 L. Ed. 2d 808 (1995).

status, and "each case must be evaluated on its own facts").  Here, Martinez was represented by counsel through his trial and direct appeal and was able to file a number of subsequent pleadings which nevertheless omitted the instant claim.  His *pro se* status does not excuse his failure to raise the issue of counsel's alleged failure to pursue a theory relating to Alexis Guzman at the plea or trial stage.  "Similarly, ineffective assistance of appellate counsel will not normally support a finding of good cause in the habeas context[,]" especially where petitioner "was represented by counsel throughout his state-court proceedings[.]"  Dorisca v. Marchilli, No. 17-10376-FDS, 2017 WL 3037784, at *3 (D. Mass. July 18, 2017) (and cases cited).  In the habeas context, "cause" sufficient to excuse a procedural default "must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule."  Burks v. Dubois, 55 F.3d 712, 716-17 (1st Cir. 1995).  In the absence of good cause for the failure to exhaust, there is no basis to stay the instant proceeding to grant Martinez time to pursue his claims in state court.

<u>The Proposed Claims Fail on the Merits</u>

The Stay Motion should be denied for the additional reason that the proposed claims are not potentially meritorious.  As an initial matter, Martinez's contention that trial counsel was ineffective for failure to raise the issue of Alexis Guzman's potential liability in connection with plea negotiations could have been raised in his direct appeal and any appeal thereafter.  Similarly, his claim that trial and appellate counsel were ineffective for failure to explore Alexis Guzman's role could have been raised in Martinez's motion for a new trial or Gatekeeper Petition to the SJC, but it wasn't.  "Massachusetts has a routinely enforced, consistently applied contemporaneous objection rule."  Burks, 55 F.3d at 716.  Therefore, it is likely that this new

claim would be rejected by the Massachusetts courts on an "adequate and independent state ground." Id. See Pike v. Guarino, 492 F.3d 61, 73 (1st Cir. 2007) ("a claim is procedurally defaulted if it was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred"); Hodge v. Mendonsa, 739 F.3d 34, 44 (1st Cir. 2013) ("We have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts.") (citation omitted).

Moreover, Martinez has not met the standard for establishing ineffective assistance of counsel. Defendants have a Sixth Amendment right to effective assistance of competent counsel, "a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012). "Claims that counsel provided ineffective assistance during plea negotiations are reviewed using the two-part test of Strickland v. Washington, 466 U.S. 668 (1984), under which a defendant must show that counsel's performance fell below an 'objective standard of reasonableness' and that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" United States v. Jones, Crim. No. 07-10162-GAO, 2019 WL 1385110, at *1 (D. Mass. Mar. 26, 2019) (quoting Lafler, 566 U.S. at 162-63, 132 S. Ct. at 1385). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163, 132 S. Ct. at 1384. Thus, "a defendant claiming ineffective assistance at the plea bargaining stage must show that 'but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court(,) … the court would

[19]

have accepted its terms, and that the conviction or sentence, or both, under the offer's terms

would have been less severe than under the judgment and sentence.'" United States v. Rivera-

Ruperto, 852 F.3d 1, 8-9 (1st Cir. 2017) (quoting Lafler, 566 U.S. at 164, 132 S. Ct. at 1385).

Here, Martinez admits that there was evidence at trial that he witnessed an argument

between Guzman and the victim, which culminated "in Guzman attacking the victim with what

appeared to be a kitchen knife." (Stay Motion at 10).  He faults counsel for failing "to investigate

an agreement with the government, even if nothing came out of the Proffer Session." (Id. at

11).  However, he has put forth no evidence concerning the course or status of plea

negotiations, if any.  Thus,

> [Martinez] has failed to demonstrate that but for counsel's error, the result of the
> proceeding would have been different.  He has not shown that there was a
> reasonable probability either that a firm, favorable plea offer would have been
> presented to him by the prosecution or that any similarly favorable sentencing
> recommendation would have been accepted by the court.

Jones, 2019 WL 1385110, at *2.  Under such circumstances, Martinez's claim of ineffective

assistance of counsel at the plea negotiation stage must fail.

It is unclear what, if anything, Martinez is claiming with respect to trial counsel's

development of the role of Alexis Guzman at trial.  Martinez testified that "he saw Alexi Guzman

argue with the victim and that the argument escalated, culminating with Guzman attacking the

victim with a kitchen knife." Martinez, 487 Mass. at 271, 166 N.E.3d at 1006.  He further

testified "that he himself was injured as he attempted to separate them." Id.  Any evidence that

Martinez is now seeking to bring before the state court would be "cumulative of other evidence

that was before the jury" and "would not have negated the powerful DNA evidence implicating

the defendant." Id. at 272-73, 166 N.E.3d at 1007.  Martinez has failed to establish that trial

[20]

counsel's performance "fell below an objective standard of reasonableness" or that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 669, 104 S. Ct. 2052, 2055-56, 80 L. Ed. 2d 674 (1984). For these reasons, Martinez has not stated a claim of ineffective assistance of counsel in connection with evidence relating to Alexi Guzman, and this court recommends that Martinez's Stay Motion be denied.

## IV.   HABEAS PETITION

For the reasons that follow, this court also recommends that Martinez's habeas petition be denied.

### A.   Standard of Review

The standard of review to be applied to Martinez's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The standard allows a federal court to grant a writ of habeas corpus only if the underlying state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In undertaking this analysis, "a habeas court must determine what arguments or theories supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Wetzel v. Lambert, 565 U.S. 520, 524, 132 S. Ct. 1195, 1198, 182 L. Ed. 2d 35 (2012) (quoting Harrington v. Richter, 562 U.S. 86, 102, 131 S.

Ct. 770, 786, 178 L. Ed. 2d 624 (2011) (internal punctuation omitted)).  "In this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta,'" of the Supreme Court's decisions.  Howes v. Fields, 565 U.S. 499, 505, 132 S. Ct. 1181, 1187, 182 L. Ed. 2d 17 (2012) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000)).

A writ of habeas corpus is only appropriate "under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002).  By contrast, relief is proper "under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [the Supreme Court] decisions but unreasonably applies it to the facts of the particular case."  Id.  An unreasonable application is more than just error, entailing "some increment of incorrectness beyond error[.]" McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (citation omitted); accord Bell, 535 U.S. at 694, 122 S. Ct. at 1850.  The "increment of incorrectness beyond error . . . 'must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court.'"  Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011) (quoting McCambridge, 303 F.3d at 36). Moreover, under this analysis, "a state court is afforded deference and latitude."  Hensley v. Roden, 755 F.3d 724, 731 (1st Cir. 2014).

With respect to factual findings, "the AEDPA sets out a separate and exacting standard applicable to review of a state court's factual findings."  Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (citing, inter alia, 28 U.S.C. § 2254(e)(1)).  There is a presumption that factual findings by the state court are correct, and the habeas court must defer to such findings.  See Sanna v.

[22]

<u>Dipaolo</u>, 265 F.3d 1, 10 (1st Cir. 2001).  However, "a habeas petitioner can rebut this presumption by adducing 'clear and convincing evidence'" that convinces the habeas court "that the underlying state court's adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[.]'"  <u>Id.</u> (quoting 28 U.S.C. §§ 2254(e)(1) & (d)(2)); <u>see</u> <u>also</u> <u>Teti v. Bender</u>, 507 F.3d 50, 57 (1st Cir. 2007) (petitioner bears the burden of overcoming the presumption of correctness by providing "clear and convincing evidence" of the error (quoting 28 U.S.C. § 2254(e)(1))).  Similarly, the habeas court "can disagree with a state court's credibility determination" and conclude that "the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003).

Applying these principals, this court recommends that Martinez's habeas petition be denied.

**B.      Ground One: Exclusion of Third-Party Culprit Evidence**

The SJC found no error in the decision of the trial judge to exclude Martinez's proffered evidence and arguments seeking to implicate Alex Quinto Rodriguez, "Monster," or the brothers from the Dominican Republic, applying the standard that such third-party evidence would be admissible "if it tends to show that another person committed the crime or had the motive, intent, and opportunity to commit it, and if the evidence is of substantial probative value, and will not tend to prejudice or confuse[.]"  <u>Martinez</u>, 487 Mass. at 267-68, 166 N.E.3d at 1004. This standard is consistent with Supreme Court law, and the SJC's analysis of the facts (as described above) was not contrary to or an unreasonable application of Supreme Court law.

[23]

See id. at 268-70, 166 N.E.3d at 1004-05.

Under the Sixth Amendment, "defendants generally have the right to present 'competent, reliable . . . exculpatory evidence.'" DiBenedetto v. Hall, 272 F.3d 1, 7-8 (1st Cir. 2001) (quoting Crane v. Kentucky, 476 U.S. 683, 690-91, 106 S. Ct. 2142, 2147, 90 L. Ed. 2d 636 (1986)).  However, the "'right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions,' including the state's 'legitimate interest in ensuring that reliable evidence is presented,' and evidentiary exclusions will not violate the constitution 'so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" Id. (quoting United States v. Scheffer, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264, 140 L. Ed. 2d 413 (1998) (additional citations omitted)).  Thus, under federal law "there must be evidence that there is a connection between the other perpetrators and the crime, not mere speculation on the part of the defendant."  Id.  Moreover, in the habeas context, "state evidentiary decisions will be found to violate a petitioner's constitutional rights only in 'egregious situations.'" Bonnett v. Thibault, 694 F. Supp. 3d 157, 162 (D. Mass. 2023) (quoting DiBenedetto, 272 F.3d at 8).

Here, the SJC analyzed the evidence and concluded that the evidence related to Rodriguez did not establish a "substantial link" between him and the murder, the evidence related to Monster reflected only a "potential opportunity to kill the victim" but nothing more, and the evidence relating to the Dominican brothers indicated a potential "motive to kill the victim" but nothing more.  Martinez, 487 Mass. at 268-70, 166 N.E.3d at 1004-05.  There was no error in excluding such testimony, much less an error of constitutional dimensions.

**C.**     **Ground Two: Exclusion of Defendant's Testimony**

The SJC concluded that the trial judge had erroneously excluded the Defendant's

testimony concerning statements made by Guzman before and after he attacked the victim with

a kitchen knife because the statements were not hearsay as they had not been offered for the

truth.  Id. at 271-72, 166 N.E.3d at 1006-07.  The SJC concluded, however, that error was not

prejudicial, and was "harmless beyond a reasonable doubt" as the testimony was "cumulative

of the evidence that the jury already had before them."  Id. at 271-73, 166 N.E.3d at 1006-07.

The SJC applied a standard that was consistent with federal law as defined by the Supreme

Court, and its conclusion was not contrary to or an unreasonable application of Supreme Court

law.

The Supreme Court has applied a "harmless-beyond-a-reasonable-doubt standard in

reviewing claims of constitutional error of the trial type."  Brecht v. Abrahamson, 507 U.S. 619,

630, 113 S. Ct. 1710, 1717, 123 L. Ed. 2d 353 (1993).  The burden is even more substantial in a

habeas review.  As the Supreme Court explained in Davis v. Ayala, 576 U.S. 257, 135 S. Ct. 2187,

192 L. Ed. 2d 323 (2015):

> In a collateral proceeding, the test is different.  For reasons of finality, comity, and
> federalism, habeas petitioners "are not entitled to habeas relief based on trial
> error unless they can establish that it resulted in 'actual prejudice.'" *Brecht,* 507
> U.S., at 637, 113 S.Ct. 1710 (quoting *United States v. Lane,* 474 U.S. 438, 449, 106
> S.Ct. 725, 88 L.Ed.2d 814 (1986)).  Under this test, relief is proper only if the federal
> court has "grave doubt about whether a trial error of federal law had 'substantial
> and injurious effect or influence in determining the jury's verdict.'" *O'Neal v.
> McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).  There must
> be more than a "reasonable possibility" that the error was harmful.  *Brecht, supra,*
> at 637, 113 S.Ct. 1710 (internal quotation marks omitted).  The *Brecht* standard
> reflects the view that a "State is not to be put to th[e] arduous task [of retrying a
> defendant] based on mere speculation that the defendant was prejudiced by trial

[25]

> error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman,* 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (*per curiam*).

Id. at 267-68, 135 S. Ct. at 2197-98.  Moreover, where, as here, the state court has applied the correct standard and determined that an error was harmless beyond a reasonable doubt, "a federal court may not award habeas relief under § 2254 unless the harmless determination itself was unreasonable."  Id. at 269, 135 S. Ct. at 2199 (quoting Fry v. Pliler, 551 U.S. 112, 118, 127 S. Ct. 2321, 2326, 168 L. Ed. 2d 16 (2007) (emphasis omitted)).

In the instant case the SJC's analysis was consistent with Supreme Court law and there was no error.  The statements to which Martinez wanted to testify related to information which was already before the jury.  There was evidence from which the jurors could have easily concluded that there was animosity between Guzman and the victim, and there was evidence from which the jury could have concluded that Martinez believed that Guzman was going to take the victim to the hospital.  Moreover, as the SJC concluded, "the information would not have negated the powerful DNA evidence implicating" Martinez.  Martinez, 487 Mass. at 273, 166 N.E.3d at 1007.  In light of the cumulative nature of the proposed testimony, and the strength of the case against Martinez, the SJC's conclusion that the exclusion of this testimony was harmless beyond a reasonable doubt was not unreasonable or contrary to Supreme Court law.

### D.   Ground Three: Voluntary Intoxication Instruction/Ineffective Assistance of Counsel

In Ground Three, Martinez argues that it was error for the judge not "to inform the jury that they could consider intoxication when determining whether the crime was committed with extreme atrocity or cruelty" and that "trial counsel was ineffective in failing to insist" on such an

instruction.  <u>Martinez</u>, 487 Mass. at 273 & n.8, 166 N.E.3d at 1008 & n.8.  The SJC held that

since "the standard under G.L. c. 278, § 33E, is more favorable to the defendant than the

standard for ineffective assistance of counsel, we review both claims for a substantial likelihood

of a miscarriage of justice."  <u>Id.</u> at n.8.  The SJC concluded that while the Defendant was entitled

to such an instruction, "the error did not result in a substantial likelihood of a miscarriage of

justice, as the evidence presented at trial did not suggest that the defendant was actually

intoxicated or otherwise impaired."  <u>Id.</u> at 275, 166 N.E.3d at 1009.  This conclusion is not

contrary to or an unreasonable application of Supreme Court law.[5]

 "To prove ineffective assistance of counsel, a petitioner must demonstrate both deficient

performance and prejudice."  <u>Sexton v. Beaudreaux</u>, 585 U.S. 961, 965, 138 S. Ct. 2555, 2558,

201 L. Ed. 2d 986 (2018) (citing <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064).  As the <u>Strickland</u>

court held:

> First, the defendant must show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant
> makes both showings, it cannot be said that the conviction . . . resulted from a
> breakdown in the adversary process that renders the result unreliable.

---

[5] The Respondent argues that the court should conclude that the SJC denied Martinez's appeal on this
issue on the basis of procedural default for failing to object at trial, and that the habeas court should
deny the habeas petition because the claim is barred.  (<u>See</u> Resp. Mem. at 23).  However, in light of the
SJC's decision to address the merits of the claim, and the fact that the SJC acknowledged Martinez's
claim of ineffective assistance of counsel, which was raised in his direct appeal, it is more appropriate to
address Martinez's objection than to consider it barred on procedural grounds.  <u>See</u> <u>Harris v. Reed</u>, 489
U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989) ("[A] procedural default does not bar
consideration of a federal claim on either direct or habeas review unless the last state court rendering a
judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.")
(citation omitted).

466 U.S. at 687, 104 S. Ct. at 2064.

"Under the first prong of Strickland, there is a strong presumption that counsel's strategy and tactics fall within the range of reasonable professional assistance, and courts should avoid second-guessing counsel's performance with the use of hindsight." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotations and citation omitted). "It is only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it, that the ineffective assistance prong is satisfied." Id. (internal quotations omitted).

"Under the prejudice prong, not all errors by counsel are sufficient to meet the standard of a reasonable probability that, but for the counsel's errors, the result of the proceeding would have been different." Id. (citation omitted). The probability must be "sufficient to undermine confidence in the outcome," and the burden is a "heavy" and "highly demanding" one. Id. (internal quotations and citations omitted). "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Id. (citation omitted).

Finally, in reviewing a claim of ineffective assistance of counsel, a habeas court "must be 'doubly deferential' in order to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Donald, 575 U.S. 312, 316-17, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (internal quotations and citation omitted). See also Sexton, 585 U.S. at 968, 138 S. Ct. at 2560 (Supreme Court precedent holds that "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.") (internal quotations and citation omitted).

[28]

The SJC's conclusion that there was no evidence that Martinez was intoxicated at the time of the murder was amply supported by the record.  For example, but without limitation, Martinez affirmatively represented to the jury that he had not injected himself with heroin at the apartment.  As he testified, things were "awkward" when Guzman arrived at the apartment, since Guzman was his drug dealer.  (Docket No. 13-42 at 46-47).  As he testified further:

> Q.  And you injected the heroin, that you had in your needle that you brought with you from the bathroom?
>
> A.  I tried to inject the heroin.  I don't think I was successful.
>
> Q.  You don't know if you were ever successful?
>
> A.  I know I wasn't successful.
>
> Q.  You know you weren't successful?
>
> A.  Yes, because when I pulled it out and I started bleeding, I never tried to use it again.

(Id. at 47).[6]

In the absence of evidence of intoxication, any error in failing to give an instruction on voluntary intoxication did not violate Martinez's constitutional rights.  See Middleton v. McNeil, 541 U.S. 433, 437, 124 S. Ct. 1830, 1832, 158 L. Ed. 2d 701 (2004) ("[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.").  The SJC's conclusion that the absence of the instruction "did not result in a substantial

---

[6] In addition, the court notes that Martinez's defense at trial was that he was not the killer, not that he did not have the capacity to commit the crime.  (See Docket No. 13-43 at 9-21 (defense closing argument)).  In fact, to the extent that the defense noted that Martinez was a heroin addict, it was to establish that he was not violent.  As defense counsel argued, "Heroin makes people calm.  When they are high, they nod out.  When they withdraw, they become sick."  (Id. at 11).  It would have been inconsistent with the defendant's theory to argue that intoxication reduced his capacity to commit the crime.

likelihood of a miscarriage of justice" in the absence of evidence of intoxication was not

contrary to or an unreasonable application of Supreme Court law.  Martinez, 487 Mass. at 275,

166 N.E.3d at 1009.

      **E.**      **Ground Four: Confrontation Clause**

In his final Ground for habeas relief, Martinez argues that it violated his constitutional

rights to have a substitute medical examiner testify, and that trial and appellate counsel were

ineffective for failing to object.  This issue was raised for the first time in Martinez's motion for a

new trial and was rejected by the trial judge and then rejected by a Single Justice of the SJC

both on the grounds that it was not a "new issue" and because it did not raise a "substantial"

issue since there were just "a few passing references" to the original medical examiner's report

and the manner of death was not an issue.  (Docket No. 13-3 at 2-3).  This claim fails to state a

basis for habeas relief.

Where, as here, the Single Justice of the SJC has acted as the Gatekeeper under § 33E

and has determined that the claim raised is neither "new" nor "substantial" the ruling

"constitutes a finding of procedural default under state law."  Costa v. Hall, 673 F.3d 16, 23 (1st

Cir. 2012).  Therefore, the "petitioner must demonstrate cause for any state-court procedural

default of federal claims, and prejudice therefrom, before the federal courts may consider the

merits of those claims."  Id.  Here, for all the reasons described above, Martinez has not

established good cause for failing to raise this issue at the trial or appellate level since it was

obvious at the time of trial.  Similarly, he has not established that he was prejudiced by the admission of the "passing references" to the original report, especially since the medical examiner's testimony "was primarily focused on describing his own observation of the victim's injuries as shown by the autopsy photographs, which were admitted as exhibits at trial." (Docket 13-3 at 3).  The existence of this procedural default, therefore, can end this habeas review.

Even if the court were to reach the merits of this claim, Martinez has not established that the state court ruling was contrary to or an unreasonable application of Supreme Court law. Rather, the federal courts have recognized that Supreme Court law does not establish that testimony by an expert witness who references the work of others, but offers her own opinion, is unconstitutional.  See, e.g., Barbosa v. Mitchell, 812 F.3d 62, 66-67 (1st Cir. 2016).  See also Commonwealth v. Leiva, 484 Mass. 766, 792, 146 N.E.3d 1093, 1117 (2020) (no violation of a defendant's confrontation rights where "[a] medical examiner who did not personally attend or supervise a victim's autopsy . . . form[s] a proper independent opinion on the victim's cause of death by reviewing another medical examiner's autopsy report and autopsy photographs."). Therefore, Ground Four fails to state a claim for habeas relief.

## V.   CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that "Petitioner's Motion to Amend Petition for Writ of Habeas Corpus and

[31]

Stay Proceedings Pending State-Courts Exhaustion of New Claims" (Docket No. 48) and

Petitioner's Habeas Petition (Docket No. 1) be DENIED.[7]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[7] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).